UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DORIS SAGE, as limited          )
guardian of her son,            )
ISAAC SAGE,                     )
                                )
          Plaintiff,            )
                                )
     v.                         )    Case No. 2:16-cv-116
                                )
CITY OF WINOOSKI, through       )
its Police Department, and      )
JASON NOKES in both his         )
individual and official         )
capacities,                     )
                                )
          Defendants.           )

## OPINION AND ORDER

Plaintiff Doris Sage, as the mother and personal representative of Isaac Sage, brings this action claiming that a Winooski police officer wrongfully shot her mentally-ill son in 2013.  Defendants City of Winooski and Corporal Jason Nokes have filed motions to dismiss certain counts in the Complaint.  Ms. Sage has moved to amend her Complaint.  All motions are opposed. For the reasons set forth below, the pending motions are each granted in part and denied in part.

## Factual Background

For purposes of the pending motions to dismiss, the facts alleged in the Complaint will be accepted as true.  At 1:40 p.m. on April 25, 2013 Corporal Jason Nokes and Officer Chris MacHavern of the Winooski Police Department responded to a report of a person trespassing at the Woolen Mill Health Club in

Winooski.  That person was Isaac Sage, a Winooski resident with a long history of mental health issues.

When the officers arrived at the scene, they were told by health club employees that Mr. Sage had left the property at their request.  The employees nonetheless asked the officers to serve him with a notice of trespass.  The officers then returned to their cruisers and began to search for Mr. Sage.

At 1:46 p.m., Corporal Nokes notified police dispatch that he had spotted Mr. Sage on West Allen Street.  The Complaint alleges that Mr. Sage was walking to the Winooski Police Department to report mistreatment by health club staff.  Officer MacHavern arrived at the West Allen Street location, saw Corporal Nokes speaking with Mr. Sage, and exited his cruiser.

When Corporal Nokes asked Mr. Sage for identification, Mr. Sage responded that Corporal Nokes should already know him as a resident of Allen House.  The Complaint describes Allen House as "a residence owned and operated by the Howard Center . . . for persons with chronic and persistent serious mental illness."  ECF No. 1 at 3, ¶ 3.  Plaintiff asserts that Winooski police are occasionally called to Allen House to address disturbances, and that the reference should have alerted the police officers that Mr. Sage was mentally disabled.

When Mr. Sage declined to provide identification, Corporal Nokes asked if he preferred to be arrested and proceeded to open

a handcuff case.  Seeing the handcuff case, Mr. Sage struck
Corporal Nokes in the face, causing Corporal Nokes to back away
and move toward his cruiser.  Officer MacHavern grabbed Mr. Sage,
but Mr. Sage was able to spin away.  Officer MacHavern then
deployed his Taser and shot Mr. Sage with two Taser barbs.  When
the first Taser cartridge had no effect, Officer MacHavern fired
the Taser a second time.  At that point Mr. Sage was flailing,
and Officer MacHavern moved toward him to deploy his Taser in
"drive stun" mode.

Before Officer MacHavern could again deploy his Taser,
Corporal Nokes, who was ten to fifteen feet away from Mr. Sage,
fired his service weapon and hit Mr. Sage in the leg.  The
Complaint alleges Mr. Sage was not moving toward either officer
when he was shot.  Mr. Sage fell to the ground and was taken to
the hospital for treatment.  He was later transported to the
Vermont State Police barracks in Williston.

Immediately after the incident, Corporal Nokes told Officer
MacHavern that he thought Mr. Sage was holding a knife at the
time of the shooting.  Corporal Nokes subsequently made similar
statements to other officers.  According to the Complaint,
however, Corporal Nokes later admitted that he did not see
anything in Mr. Sage's hand, and a subsequent investigation
determined that Mr. Sage had not been carrying a weapon.

In addition to suing Corporal Nokes, the Plaintiff has

brought claims against the City of Winooski for negligent hiring, training, and retention.  In support of the negligent retention claim, the Complaint alleges that Corporal Nokes has "a substantial history of malfeasance, dishonesty and character weakness," including a 2008 drunk driving incident.

### Procedural Background

The Complaint consists of five causes of action: (1) unreasonable use of deadly force in violation of the Fourth and Fourteenth Amendments; (2) failure to provide reasonable accommodations in violation of Section 504 of the Rehabilitation Act; (3) failure to provide reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"); (4) intentional tort claims of assault, battery, and intentional infliction of emotional distress; and (5) negligent hiring, training, and retention by the City of Winooski.  For relief, the Complaint seeks compensatory damages, punitive damages, and attorneys fees and costs.

Currently pending before the Court are motions to dismiss filed by the City of Winooski and Corporal Nokes.  The City's motion argues for dismissal of the ADA and Rehabilitation Act claims for failure to state a claim, and for the dismissal of all state law tort claims on the basis of municipal immunity.  Corporal Nokes moves to dismiss only the ADA and Rehabilitation Act claims.  Plaintiff has since moved for leave to file an

Amended Complaint, with the primary amendment being an additional cause of action under the Vermont Fair Housing and Public Accommodations Act.  The motion to amend is opposed.

## Discussion

**I.  Motions to Dismiss**

### A.  Legal Standard

Defendants' motions are each filed pursuant to Fed. R. Civ. P. 12(b)(6), which permits the Court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." When ruling on such a motion, the Court must "'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"  *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.  The City's Motion to Dismiss

i.  Application of Disability Laws to Arrests

The City first argues that the ADA and Section 504 of the
Rehabilitation Act may not apply to arrests.  Title II of the ADA
prohibits any public entity from discriminating against
"qualified individual[s]" with disabilities "in the provision or
operation of public services, programs, or activities."
*Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  To prove a
violation of Title II of the ADA, a plaintiff must demonstrate:
"(1) that he is a 'qualified individual' with a disability; (2)
that he was excluded from participation in a public entity's
services, programs or activities or was otherwise discriminated
against by a public entity; and (3) that such exclusion or
discrimination was due to his disability."  *Hargrave v. Vermont*,
340 F.3d 27, 34–35 (2d Cir. 2003).[1]  The purpose of the Act is to
"eliminate discrimination on the basis of disability and ensure
evenhanded treatment between the disabled and the able-bodied."
*Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The Second Circuit "has not addressed the issue of whether
an arrest itself is a 'program, service or activity' under the

---

[1]  Since "[t]hese requirements apply with equal force to
plaintiffs' Rehabilitation Act claims," courts generally analyze the
claims in tandem.  *Id.* at 35; *see Powell v. Nat'l Bd. of Med. Exam'rs*,
364 F.3d 79, 85 (2d Cir. 2004) ("Since the standards adopted by Titles
II and III of the ADA are, in most cases, the same as those required
under the Rehabilitation Act, . . . we consider the merits of these
claims together."); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d
Cir. 2003) ("[U]nless one of those subtle distinctions [between the
Rehabilitation Act and the ADA] is pertinent to a particular case, we
treat claims under the two statutes identically.").  Accordingly, the
Court's analysis of Plaintiff's ADA claim incorporates the
Rehabilitation Act claims as well.

ADA." *Ryan v. Vermont State Police*, 667 F. Supp. 2d 378, 386 (D. Vt. 2009).[2]  The Supreme Court recently declined to resolve the question.  *See City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773 (2015).

Other courts have considered the ADA's application to arrests and "generally found that Title II applies, but the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of a particular case." *Williams v. City of New York*, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015) (citations omitted); *see also Sheehan v. City and Cty. of San Francisco*, 743 F.3d 1211, 1217 (9th Cir. 2014) (joining the "majority of circuits" in holding that the ADA applies to police interactions), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015).  Courts have also recognized two types of claims: (1) wrongful arrest, where a suspect is arrested because police misperceived the effect of his disability as criminal activity, and (2) a failure to provide reasonable accommodations, "where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other

---

[2]  The term "arrest" is often construed broadly in this context to include not only arrests themselves, but also pre-arrest investigations and confrontations with arrestees.  *See, e.g., Hainze v. Richards*, 207 F.3d 795, 800 n.28 (5th Cir. 2000); *Gohier v. Enright*, 186 F.3d 1216, 1220 n.2 (10th Cir. 1999).

arrestees." *Ryan*, 667 F. Supp. at 387 (citations omitted).  This case alleges a lack of reasonable accommodation, and the Court will follow the majority position and apply the ADA to the facts presented in the Complaint.

In addition to arguing that the ADA and other discrimination statutes may not apply to police interactions, Defendants contend that even assuming such applications, Plaintiff's claims should be dismissed.  Defendants first argue that Plaintiff does not allege sufficient facts to show that Mr. Sage is disabled.  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The regulations implementing the ADA set forth examples of such major life activities, which include: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 130.2(I).

The Complaint asserts that Mr. Sage has "a longstanding history of mental health issues, which have at times been sufficiently severe to warrant involuntary commitment to a psychiatric institution."  The Complaint also alleges that Mr. Sage has been found incompetent to stand trial in a criminal case.  While these allegations do not identify specific life

activities, they imply serious mental health issues that have prevented Mr. Sage from managing himself in society.  Indeed, it is his mother, Doreen Sage, who has been granted legal guardian status to bring this action on his behalf.  The Court will therefore infer, for purposes of the pending motions, that Mr. Sage suffers from mental disabilities sufficient to bring him within the protections of the ADA.  *See generally In re Scholastic Corp. Securities Litigation*, 252 F.3d 63, 69 (2d Cir. 2001) (holding that on a motion to dismiss, courts must "draw[] all reasonable inferences in favor of plaintiffs.").

Defendants next argue that Mr. Sage was not entitled to ADA protection because he presented a direct threat.  Federal regulations do "not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others."  28 C.F.R. § 35.139(a).  Most often applied in the employment context, "[t]he term direct threat means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services."  42 U.S.C.A. § 12182(B)(3).  It is the defendant's burden to establish that a plaintiff poses a direct threat of harm to others.  *Hargrave*, 340 F.3d at 35.

The facts presented here involve a mentally-ill individual accused of trespassing who became violent only after being threatened with arrest and shown a handcuff case. Again making all reasonable inferences in the Plaintiff's favor, the violent behavior could arguably have been avoided if the officers had acknowledged and accommodated Mr. Sage's mental illness. Moreover, the pleadings suggest a potential question of fact as to whether, and to what extent, Mr. Sage presented a danger to the officers at the time of the shooting. Accordingly, the Court will not, at this early stage in the case, dismiss on the basis of Defendants' "direct threat" defense.

Defendants also argue that Plaintiff's ADA claim fails because Mr. Sage never made a demand for accommodations. The Second Circuit has held, however, that reasonable accommodations are required if the disability is obvious. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (holding that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled"). Here, the Complaint alleges that Mr. Sage's reference to Allen House should have communicated to the police that they were dealing with a mentally ill person. Accepting that allegation as true, Mr. Sage was not required to request an accommodation when approached by the police.

Defendants further argue that Mr. Sage has failed to identify what accommodations should have been made.  The most specific allegation in this regard is found in the proposed Amended Complaint, albeit in a newly-asserted claim under the state law analog to the ADA: the Vermont Fair Housing and Public Accommodations Act, 9 V.S.A. §§ 4501 *et seq.* ("VFHPAA").  The VFHPAA claim alleges that Corporal Nokes should have provided reasonable accommodations by "not laying his hands on Mr. Sage" and instead contacting a Howard Center counselor "who was no more than several hundred yards away from the scene of the incident." ECF No. 17-1 at 21, ¶ 80.

The Ninth Circuit, in a factually similar case, addressed this same question of whether the pleadings adequately asserted accommodations that should have been made by police.  *See Sheehan*, 743 F.3d at 1216.  In *Sheehan*, a mentally-ill person was threatening police with a knife.  The court explained that while the plaintiff bore "the initial burden of producing evidence of the existence of a reasonable accommodation," she had met her burden at the motion to dismiss stage by asserting that "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation."  *Id.* at 1233.

Here, Mr. Sage alleges that the police could have

accommodated him by avoiding physical contact and calling a
nearby mental health counselor.  As in *Sheehan*, these allegations
are sufficient to overcome the City's motion to dismiss under
Rule 12(b)(6).  The City's motion to dismiss Mr. Sage's ADA and
Rehabilitation Act claims is therefore **denied**.

    ii.  Municipal Immunity from Tort Claims

    The City next contends that it is immune from Plaintiff's
state law tort claims.[3]  Those claims include both the
intentional torts alleged in the fourth Count of the Complaint,
and the claims of negligent hiring, training, and retention.  By
asserting that the City "aided and abetted" Corporal Nokes, ECF
No. 1 at 20, ¶ 78, Plaintiff seeks to hold the City liable for
Corporal Nokes's alleged misconduct.

    Under Vermont law, a municipality can sometimes assert
immunity from claims of liability for an employee's actions.  *See
Morway v. Trombly*, 789 A.2d 965, 968 (Vt. 2001) (recognizing that
"[m]unicipal immunity is a common-law doctrine dating back to the
mid-1800s in Vermont"); *see also Decker v. Fish*, 126 F. Supp. 2d
342, 346 (D. Vt. 2000) (finding municipality immune from state
law claims brought under the doctrine of *respondeat superior*).

---

    [3]  The Court has supplemental jurisdiction over Plaintiff's state
law claims pursuant to 28 U.S.C. § 1367(a) and is required to apply
Vermont law to substantive issues.  *See Promisel v. First Am.
Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) ("In
applying pendent jurisdiction, federal courts are bound to apply state
substantive law to the state claim.").

Specifically, the Vermont Supreme Court has held that
"[m]unicipal immunity protects municipalities 'from tort
liability in cases where the municipality fulfills a governmental
rather than a proprietary function.'" *Sobel v. City of Rutland*,
2012 VT 84, ¶ 14, 192 Vt. 538, 60 A.3d 625 (quoting *Courchesne v.
Town of Weathersfield*, 2003 VT 62, ¶ 9, 175 Vt. 585, 830 A.2d 118
(mem.)).  Vermont courts have also determined that police work is
a governmental function.  *See, e.g., Franklin Cty. Sheriff's
Office v. St. Albans City Police Dep't*, 2012 VT 62, ¶ 12, 192 Vt.
188, 196, 58 A.3d 207, 214 ("[T]he provision of police services
in Vermont occurs outside the realm of commerce because it
involves no interchange of goods or commodities on the open
market.  It is a government function provided only by
governmental entities for the benefit of the public."); *Carty's
Adm'r v. Vill. of Winooski*, 62 A. 45, 46 (Vt. 1905) ("One of the
powers of government inherent in every sovereignty is the
governing and regulating of its internal police."); *see also
Decker*, 126 F. Supp. 2d at 346 ("[T]here can be little question
that police work is a quintessential governmental function.").
Accordingly, the City's hiring, training and supervision of
Corporal Nokes was a purely government function, and it cannot be
held liable for his allegedly-tortious actions.

Plaintiff also claims that the City is liable for its own
conduct in the form of grossly negligent hiring, training and

retention.  Municipal immunity again applies, as this and other courts have consistently held that training and supervision of police officers are governmental functions and, as such, cannot be grounds for tort liability.  *See, e.g., MacLeod v. Town of Brattleboro*, 2012 WL 5949787, at *21 (D. Vt. Nov. 28, 2012) ("Most courts, including this one, have concluded that training police officers and evaluating their conduct both fall within the governmental function of police work.") (citations omitted). Plaintiff's tort claims against the City of Winooski are therefore **dismissed.**

### C.   Corporal Nokes's Motion to Dismiss

Corporal Nokes has moved to dismiss the claims brought against him under the ADA and the Rehabilitation Act, arguing that those claims cannot be maintained against him in his individual capacity.  The Second Circuit has made clear that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  All individual capacity claims brought against Corporal Nokes under the ADA and the Rehabilitation Act are **dismissed.**

Corporal Nokes also submits that he cannot be sued for damages in his official capacity.  "Within the Second Circuit, where a plaintiff names both the municipal entity and an official

14

in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012) (collecting cases).  Vermont law dictates that, with the exception of willful or intentional acts, claims for acts or omissions of a municipal employee must be brought against the municipality itself.  24 V.S.A. § 901a(b), (e).  In light of these principles, the Court will consider Plaintiff's claims against Corporal Nokes in his official capacity as claims brought against the City of Winooski, and the official capacity claims with respect to Corporal Nokes himself are **dismissed.**

Finally, Corporal Nokes requests dismissal of the ADA and Rehabilitation Act claims on the grounds asserted by the City in its motion to dismiss.  Because the Court has dismissed those claims with respect to Corporal Nokes, that request is moot and is therefore **denied.**

## II.  Plaintiff's Motion to Amend

The Plaintiff has moved to amend her Complaint to make minor changes to her factual allegations and assert a new cause of Action under the VFHPAA.  As discussed above, the VFHPAA claim is brought as a state law analog to the federal ADA and Rehabilitation Act claims asserted in the initial Complaint. Defendants do not oppose the minor additions to the Complaint, but do oppose the effort to add the VFHPAA cause of action.

15

Rule 15(a) of the Federal Rules of Civil Procedure governs a trial court's discretion in the determination of whether to allow parties to amend their pleadings, providing that "the [C]ourt should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Where amendment of the pleading is "unlikely to be productive," the Court may deny leave because further amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). The futility of such an amendment is gauged by whether the proposed claim could withstand a motion to dismiss pursuant to Rule 12(b)(6). *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002).

In opposing the motion to amend, Defendants assert the same arguments as set forth in their motions to dismiss the ADA and Rehabilitation Act claims. Specifically, Defendants contend that it "remains questionable" whether the VFHPAA applies to arrests; that Mr. Sage is not entitled to protection because he posed a direct threat; and that Plaintiff fails to assert plausible claims of either wrongful arrest or failure to accommodate, in part because the Complaint does not allege that specific accommodations were either requested or available. For the same reasons that the Court denies the City's motion to dismiss with respect to the ADA and Rehabilitation Act claims, the Court now finds that the addition of a claim under the VFHPAA is not futile with respect to the City of Winooski.

16

The Court further finds that just as the ADA and Rehabilitation Act claims cannot be brought against Corporal Nokes, the VFHPAA claim is similarly barred.  Other claims dismissed above would also be futile when presented in an amended pleading.  The motion to amend is therefore **granted** in part and **denied** in part in accordance with all rulings set forth above.

### Conclusion

For the reasons set forth above, the City's motion to dismiss (ECF No. 8) is **granted** with respect to Plaintiff's tort claims and is otherwise **denied.**  Corporal Nokes's motion to dismiss the ADA and Rehabilitation Act claims brought against him in his individual and official capacities (ECF No. 14) is **granted**, although his request for dismissal of those claims on the grounds argued by the City is **denied** as moot.  Plaintiff's motion to amend her Complaint (ECF No. 17) is **granted** in part and **denied** in part, subject to the Court's rulings above.

DATED at Burlington, in the District of Vermont, this 22nd day of March, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

17